**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

L. JOYCE FIERRO,

        Plaintiff,

v.                                                         No. CIV-O3-0102 BB/LAM

GALE NORTON, Secretary, United States
Department of the Interior,

        Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court for consideration of Defendant's Motion for
Summary Judgment filed September 3, 2004. ("Motion," Doc. 35.) The Court has reviewed the
submissions of the parties and the relevant law, and, for the reasons set forth below, finds that
Defendant's Motion should be GRANTED.

**<u>I. BACKGROUND</u>**

This action is brought by Plaintiff pursuant to the Civil Rights Act of 1964 as amended.
42 U.S.C. § 2000e-16.  Federal courts have jurisdiction to redress discriminatory conduct on the
basis of national origin and sex provided that certain administrative remedies are properly
exhausted.  <u>Id.</u> at § 2000e-16(c); <u>Brown v. Gen. Serv. Admin.</u>, 425 U.S. 820, 833 (1976).

This is a case of a BLM supervisor, Carsten Goff, who had a conceded difficulty with
supervising both males and females, whether or not of Hispanic national origin.  (Pltf. Response at
p. 3.)  The question before the Court is whether his inept supervision (Pltf. Response at Ex.4,
Rundell Dep. at 45), and his hostile, demeaning, and aggressive behavior (Pltf. Response, Ex. 6,

West Interview at 15; Ex. 7, Engdahl Interview at 6-8; Ex. 8, Jordan Interview at 10; Ex. 9,

Rudolph Interview at 7-9) was discriminatory and retaliatory.

The Plaintiff is a twenty-seven year Hispanic female employee of the Bureau of Land

Management (BLM) in the State Office in Santa Fe.  (Undisp. Fact #6; Motion Ex. D, Fierro Dep.

at 6; Complaint at ¶ 6; Answer at ¶ 6.) Beginning in 1997, she held the position of program lead

for international programs and grants which she essentially created for herself and is the only one

of its type in New Mexico. (Undisp. Fact #7.) The position was initially classified at GS-12 and

Plaintiff did not question that classification in 1997.  (Undisp. Fact #8.)  The position description

did not indicate that it had any promotion potential.  (Id.)

In 1999, Carsten Goff became Plaintiff's supervisor. (Undisp. Fact #9.)  Problems

developed with his supervision of various employees shortly thereafter.  On June 14, 2000, he

revoked his previous approval of foreign travel for another BLM employee, Angela West, in an

incident that included shouting at both Ms. West and Plaintiff and denying that he had approved

the travel although the travel form was signed by him. (Motion Ex. G, Fierro Resp. to Interrog. at

5.) In March 2001, he allegedly went "berserk" when he learned that Ms. West had attended a

meeting in Costa Rica that had been approved by the Acting State Director. (Id. at 6.)   In other

cases, his treatment of women was described as "abuse," "hostility," and "disgusting" and he

allegedly reduced Plaintiff and at least one other woman to tears on more than one occasion. (Pltf.

Response Ex. 9, Rudolph Interview at 6-8; Ex. 4, Rundell Dep. at 43.)

In 1999 and again in 2000 and 2001, Plaintiff sought an upgrade in her position to GS-13

due to accretion of duties.  (Motion Ex. G, Fierro Resp. to Interrog. at 11-12.)  During her

position review, in both 1999 and 2000, Mr. Goff and Mr. Whitley, the Associate State Director,

asked Plaintiff to place more emphasis on writing grants and less on international programs; they explained that the timing wasn't right for an upgrade to her position.  (Id.)

On March 21, 2001, Mr. Goff requested that Plaintiff redraft her position description to reflect a greater emphasis on grants.  (Undisp. Fact #10.)  Mr. Goff discussed this change in emphasis of Plaintiff's duties with the State Director, Michelle Chavez, who agreed with the increased emphasis on grants and decreased emphasis on the international program. (Undisp. Fact #11.)

On April 24, 2001, Mr. Goff met with Plaintiff and directed her to re-do her position description to reflect a split of 50% international and 50% grants and to plan on de-emphasizing the international program by 65% by the end of the fiscal year.  (Motion Ex. G, Fierro Resp. to Interrog. at 7.)

On July 17, 2001, Plaintiff discussed the change in emphasis with Mr. Whitley, the Assistant State Director and allegedly learned that Mr. Whitley had not told Mr. Goff to have her de-emphasize international work. Id. On August 14, Plaintiff discussed the change in emphasis with Ms. Chavez, the State Director, who allegedly encouraged her to re-write her position description the way that Plaintiff thought it should be (mostly international) rather than the way she had been directed by Mr. Goff. (Id. at 7-8.) Plaintiff's understanding from these conversations was that Mr. Goff was never told to de-emphasize the international program but merely to place more emphasis on grants.

Plaintiff drafted a position description that reflected a major emphasis on international as opposed to grant activities and proposed a grade of GS-13. (Undisp. Fact #13.) Most BLM GS-13 level employees had specialized knowledge or advanced degrees but it was possible for a BLM

3

employee without a college degree, like Plaintiff, to achieve GS-13.  (Pltf. Disp. Fact #14; Pltf. Response Ex. 2, Melchor Dep. at 34-36.)

On September 4, 2001, Plaintiff submitted her revised position description to Mr. Goff at a meeting with Mr. Gary Johnson, Assistant Deputy State Director and Mr. Whitley.  (Undisp. Fact #13; Motion Ex. G, Fierro Resp. to Interrog. at 8.)

On September 17, Plaintiff met with Mr. Johnson and Mr. Goff and learned that they planned to distribute her draft position description to Field Office Managers for feedback on the balance between international work and grant work.  (Id. at 8-9.) When Plaintiff asked Mr. Goff whether this was standard practice, he admitted that it was not, but explained that her program was "unique," that international work was generating "controversy" and that there was little support for international work in the Field Offices.  (Id. at 9.) He explained that he wanted to make sure that the Field Offices were getting what they needed. (Id.)

Concerned that she was being treated differently than others, Plaintiff filed her first complaint alleging discrimination on September 17, 2001.  (Undisp. Fact #1; Motion Ex. A, Complaint of Discrimination.)  Her first counseling session was held on September 22, 2001. (Def. Reply Ex. M, EEO Counselor's Report at 1.)  At that session she complained about harassment and intimidation based on National Origin and Sex[1] and objected to the distribution of her position description to the Field Managers.[2]

---

[1] Plaintiff also raised age discrimination allegations but has not brought those up in her complaint presently before the Court so that issue is waived.

[2] Plaintiff's agency complaint included, inter alia, (1) different treatment for Hispanic females, (2) harassment and intimidation, (3) assignment to undesirable work outside of Complainant's Position Description, (4) mishandling of the EEO process, (5) mishandling of the personnel grievance process, (6) reprisals as a direct result of the Complainant's EEO action. (Def. Reply Ex. M, EEO Counselor's Report at 1.)

On September 19, Mr. Goff told the Field Managers in a conference call about the planned distribution of Plaintiff's job description and on September 21, Mr. Johnson sent it out along with a memo explaining why it was sent and requesting written feedback. (Undisp. Fact #16; Motion Ex. J, Memo from Gary Johnson to Field Managers of 9/21/2001.)

Plaintiff objects to the second paragraph of this memo, characterizing it as "extremely disturbing," that it inferred she was "not credible," slandered her name and affected her adversely. (Motion Ex. G, Fierro Resp. to Interrog. at 10.)  The paragraph at issue says,

> Since the attached documentation was crafted by Joyce Fierro and the newly developed PD [position description] falls within her program areas, she is likely to contact you about this issue in an effort to obtain some feedback or clarify any questions you may have.  However, as her supervisor, I would ask that you please provide me with your written feedback for consideration into this PD no late [sic] than October 12, 2001.  If I am not in receipt of your written response by October 12, 2001, it will be assumed that the PD as written meets the needs of your Field Office and you are in concurrence.
>
> (Undisp. Fact #16; Motion Ex. J, Memo from Gary Johnson to Field Managers of 9/21/2001.)

On September 26, 2001, Plaintiff met with Mr. Goff, Mr. Whitley and Ms. Chavez.  At that meeting, Ms. Chavez explained that there had been some "confused direction" from her and Mr. Whitley that was different from what Plaintiff had been receiving from Mr. Goff.  Ms. Chavez said that she and Mr. Whitley wanted Plaintiff to put more emphasis on assisting the Field Offices with obtaining grants.  (Motion Ex. G, Fierro Resp. to Interrog. at 11.)

Meanwhile, the Field Office Managers provided written feedback on the position description.  Of the eight comments, four suggested that an appropriate blend would be 75% Grants and 25% International activities; one merely said that International should be de-

5

emphasized; two characterized the International program as having "no value" or "wasting" money; and only one spoke of it positively, calling it "essential." (Undisp. Fact #17; Motion Ex. K, Field Manager Responses at 1, 2.)  Plaintiff's position description was re-written to call for 75% Grants and 25% International.  (Undisp. Fact #17; Motion Ex. F, Goff Dep. at 35.)

Shortly after September 2001, Plaintiff was detailed to an unclassified position in the Washington D.C. office for 120 days.  (Pltf. Response at 6.)  Eventually that detail was extended so that Plaintiff worked in unclassified positions until the fall of 2002. (Id.)

Ten months later, Plaintiff still had not received a decision on her proposed job classification.  (See Motion Ex. G, Fierro Resp. to Interrog. at 22.)  On July 1, 2002, a Human Resources employee, Rita Richardson, suggested that her friend, Mr. Erick Kurkowski, in another BLM office, could get the reclassification done in a week.  (Id.) Ms. Richardson allegedly ascribed the delay in classifying Plaintiff's position to Carsten Goff. Plaintiff agreed that Ms. Richardson should request Mr. Kurkowski's assistance. (Id.)

Shortly thereafter, Plaintiff received an e-mail from Mr. Kurkowski that she would have a desk audit.[3] (Id. at 23.)  Shortly after that she received notice that the desk audit had been canceled and that Mr. Kurkowski would classify the position based on the position description he had been sent. (Id.)  Ultimately, he classified the new position description at GS-12. (Undisp. Fact #22; Motion Ex. L, Letter from Mankiewicz to Fierro of 8/29/2002.)  Plaintiff filed a second complaint of discrimination on October 2, 2002, complaining about the failure to reclassify her position at GS-13, that Mr. Goff had been excluding her from meetings and that her co-workers

---

[3]A desk audit is an evaluation of Plaintiff's existing duties and can only be done on a position of record. (Pltf. Response Ex. 2, at 10.)

were no longer speaking with her.  (Undisp. Fact #4; Motion Ex. B, Complaint of Discrimination; Pltf. Response Ex. 1, at "Summary" of 10/2/2002.)

Sometime in early 2003, after Plaintiff returned from her Washington D.C. detail, she received an award for her work there.  (Pltf. Response Ex. 5, Fierro Dep. at 23-24.)  Another employee (male) had been working in the same project for the same manager and also received the same award.  (Id.) In a meeting at which he announced their respective awards, Mr. Goff referred to the Plaintiff's award by saying, "See, work for a supervisor who's going to retire soon, and anything can happen." (Id.) With regard to the male employee's award, he said, "Wow, this is real good, to go to Washington and work on a great project, and you know, you get an award." (Id.)

Eventually, Plaintiff was transferred away from Mr. Goff's supervision.  According to Ms. Rundell, the new State Director, "it was a very poor working relationship...[Joyce] had come to my office in tears a few times...work wasn't being accomplished."  (Pltf. Response Ex. 4, Rundell Dep. at 42-43.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine issue about any material fact and if the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  It is the moving party's burden to show that there is no genuine issue of material fact, whether as to jurisdiction or the merits of the claims, even if the moving party does not have the ultimate burden at trial.  Trainor v. Apollo Metal Specialties, Inc., 318 F.3d 976, 982 (10th Cir. 2002).  In response, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 587-88 (1986).

To avoid summary judgment, the nonmoving party may not rest upon the mere allegations in the pleadings but must show, at a minimum, an inference of the existence of each essential element of the case.  Eck v. Parke, Davis & Co., 256 F.3d 1013, 1016-17 (10th Cir. 2001)(citing Hulsey v. K-Mart, Inc., 43 F.3d 555, 557 (10th Cir. 1994)). When viewing the evidence, the Court must draw reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587.  To survive a motion for summary judgment, affidavits must show that the witness has personal knowledge and must set forth facts that would be admissible in evidence; conclusory and self-serving statements are insufficient.  Salguero v. City of Clovis, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004). While, the evidence need not be in a form that is admissible at trial, the content or substance of the evidence must be admissible. Pastran v. K-Mart Corp., 210 F.3d 1201, 1204 n.1 (10th Cir. 2000).

### III. DISCUSSION

Exhaustion of Administrative Remedies

Defendant has asserted that this Court lacks subject matter jurisdiction, that Plaintiff has failed to exhaust administrative remedies, and that Plaintiff has failed to timely exhaust administrative remedies.  (Answer at 2, ¶¶ 12, 13, and 15.)  Defendant continues to raise those issues (Motion at 10-14 and 20-21) and Defendant seeks summary judgment on several claims, (1) disparate treatment pre-September 2001 (id. at 10), (2) disparate treatment related to improper classification (id. at 15), (3) hostile work environment (id. at 19), and 4) retaliation (id. at 22).

In Title VII, Congress provided a careful blend of administrative and judicial enforcement powers to protect federal employees from discrimination.  Brown v. Gen. Serv. Admin., 425 U.S.

8

820, 833 (1976); 42 U.S.C. § 2000e-16.  This blend requires exhaustion of administrative

remedies in order to properly bring an action in district court.

A federal employee who believes she has been discriminated against must request

counseling from her agency within 45 days of the date on which the discriminatory action occurs.

29 C.F.R. § 1614.105(a)(1).  This requirement is virtually absolute.  Khader v. Aspin, 1 F.3d 968,

970 (10th Cir. 1993).  Failure to exhaust administrative remedies is jurisdictional; however, failure

to *timely* exhaust is in the nature of a statute of limitations and is subject to equitable tolling. See

Harms v. IRS, 321 F.3d 1001, 1006-09 (10th Cir. 2003)(tolling is permissible if plaintiff is

actively misled or prevented from asserting her rights). However, nothing in the present record

supports equitable tolling.  See Grasso v. Queens College, 2004 WL583767, at *5 (S.D.N.Y.

May 23, 2004).

Importantly, each discrete act of discrimination must be exhausted or it is not actionable

under Title VII.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)(applied to

private employees); Martinez v. Potter, 347 F.3d 1208, 1211 (10th Cir. 2003)(applied to federal

employees). This general rule applies to bar judicial consideration of acts that are too early (those

that occurred more than 45 days prior to the request for counseling) or too late (those that occur

after a complaint is filed). Martinez, 347 F.3d at 1211.

Discrete acts include termination, failure to promote, denial of transfer, or refusal to hire.

Morgan, 536 U.S. at 114.  Discrete acts that are time barred may be used as relevant evidence to

support properly exhausted acts, but they are not actionable. Martinez, 347 F.3d at 1211.

There is one exception to the exhaustion requirement--claims of a hostile workplace.[4] Morgan, 536 U.S. at 115. The very nature of such claims involves repeated conduct and a single act of harassment may not be actionable on its own.  Id. Thus, for such claims, all actions allegedly part of a hostile workplace may be considered provided that at least "one act contributing to the claim" occurs within the 45 day period prior to a request for counseling.  Id.

This distinction between hostile work environment claims and claims of discrimination based on discrete acts leads to different analytical frameworks.  If the claim is based on discrete discriminatory acts, those acts must have occurred within 45 days before the counseling, otherwise they are not actionable.  Morgan, 536 U.S. at 114.  Unexhausted discrete claims cannot be brought into court by an argument that they are part of a hostile work place.  Davidson v. America Online, 337 F.3d 1179, 1185 (10th Cir. 2003).

Hence, before determining whether Plaintiff's claims survive a motion for summary judgment as to whether they were discriminatory, the Court must ascertain that it has jurisdiction over them by (1) identifying when Plaintiff requested counseling, (2) identifying which acts were within the 45 day period preceding that counseling, and (3) classifying those claims as discrete acts or acts potentially contributing to a claim of a hostile workplace. Once having identified the claims properly before it, the Court can proceed to consider whether there are material facts on discrimination.

---

[4]Retaliation claims were formerly excused from the exhaustion requirement, Ingles v. Thiokol Corp., 42 F.3d 616, 625 (10th Cir. 1994) but the 10th Circuit has concluded that, post Morgan, such claims must be properly exhausted as well. Martinez v. Potter, 347 F.3d 1208 (10th Cir. 2003); Annett v. Univ. of Kansas, 371 F.3d 1233 (10th Cir. 2004).

There is no dispute that counseling was sought September 17, 2001 and was followed by a formal complaint on November 8, 2001. (Undisp. Facts #1, 2; Motion Ex. A.) Plaintiff has conceded that any acts constituting disparate treatment that occurred more than 45 days prior to September 17, 2001 were untimely. (Pltf. Response at 17.)   Similarly, there is no dispute that counseling was sought October 2, 2002 and was followed by a formal complaint on March 23, 2003.  (Undisp. Fact #4; Motion Ex. B.)  Plaintiff alleges that there were additional complaints. (Disp. Fact #5.)

However, the documents to which Plaintiff points to support these allegations contain no evidence of any other counseling sessions.  Plaintiff points to Defendant's Ex. C, a letter dated May 1, 2003 that alludes to complaints filed March 31, 2003 and April 17, 2003.  It is unclear whether the complaint filed March 31, 2003 is the same as the complaint signed by Plaintiff March 23, 2003 (contained in Defendant's Motion Ex. B), and if not, what issues the complaint raised and whether they were the subject of a different counseling session.  With regard to the alleged complaint of retaliation filed April 17, 2003, the letter and summary judgment record provide no other evidence of counseling sessions. This document in Defendant's Ex. C fails to raise a genuine issue of material fact that there was an additional counseling session beyond the two already identified.

Next, Plaintiff points to a letter dated May 9, 2003, alleging that this shows there is yet another complaint.  (Pltf. Response at 1.) Again, the substance of this "complaint" is unclear.  The May 9th letter is followed by a summary statement dated October 2, 2002, a date when Plaintiff received counseling for the complaint she signed March 25, 2003.  (Undisp. Fact #4; Motion Ex.

11

B.) The May 9th letter fails to raise a genuine issue of material fact that Plaintiff had an additional counseling session beyond the two identified.

Hence, there is no genuine dispute that Plaintiff requested counseling twice, once on September 17, 2001 and once on October 2, 2002.  (Motion Ex. A, Complaint of Discrimination, showing counseling on September 17, 2001 in § 4 and Ex. B, Complaint of Discrimination, showing counseling on October 2, 2002 in § 4.)  Forty-five days before September 17, 2001 would be August 2, 2001. Fed. R. Civ. P. 6. Any discrete incidents of discriminatory conduct occurring before August 2, 2001 are barred for failure to exhaust administrative remedies. Martinez v. Potter, 347 F.3d at 1211. The only incidents occurring between August 2, 2001 and September 17, 2001 are:

(1) An August 14, 2001 conversation with Michelle Chavez in which Plaintiff sought clarification about what was expected of her International Program activities;

(2) A September 4, 2001 meeting between Plaintiff, her supervisor, Carsten Goff, Associate State Director Rich Whitley, and Assistant Deputy State Director Gary Johnson at which Plaintiff presented her proposed Position Description seeking a higher grade level; and,

(3) A September 17, 2001 meeting between Plaintiff and Gary Johnson at which Plaintiff learned that her proposed job description would be sent to Field Managers for review and comment.  (Motion Ex. G, Fierro Resp. to Interrog. at 7-9 and 20.)

In addition, the Court notes that Plaintiff's initial contact with an EEO Representative occurred on September 22, 2001 and that at that time Plaintiff raised a fourth incident--when her job description was actually sent to the Field Managers.  (Reply Ex. M, EEO Counselor's Report at § 3.)  Plaintiff alleged that this September 21, 2001 incident was the latest in a series of related

12

actions designed to harass and intimidate her, potentially raising a claim of a hostile work environment.  Id.  Because that incident was timely raised in Plaintiff's counseling, it will also be analyzed.  Martinez, 347 F.3d at 1211.

None of these four acts are discrete acts of discrimination analogous to termination, failure to promote, denial of transfer, or refusal to hire. Morgan, 536 U.S. at 114.  However, the Court will analyze them as potential elements of a claim for a hostile workplace environment.

With regard to Plaintiff's second request for counseling, forty-five days before October 2, 2002 would be August 16, 2002. Fed. R. Civ. P. 6.  For this counseling, Plaintiff complains that (1) on or about August 29, 2002, Plaintiff was informed that her[5] position review resulted in remaining classified as GS-12 rather than the GS-13 she had sought (Undisp. Fact #22; Motion Ex. L, Letter from Mankiewicz to Fierro of 8/29/2002); (2) Mr. Goff was excluding her from meetings; and (3) her co-workers were shunning her.  (Pltf. Response at 12 and Ex. 1 at "Summary" of 10/2/2002.)  The classification at GS-12 rather than GS-13 is analogous to a failure to promote and thus would be a discrete act.  Morgan, 536 U.S. at 114. However, the other two acts would not be discrete acts similar to termination, failure to promote, denial of transfer, or refusal to hire.  Id. However, they will be analyzed as potential elements of a hostile workplace claim.

In summary then, there are a total of seven incidents, four in 2001 and three in 2002 that have been administratively exhausted and are properly before the Court. The 2002 classification as GS-12 is the only discrete act that has been properly exhausted.  Any other discrete incidents of

---

[5]Defendant's evidence disputes whether this was Plaintiff's position description or a new position description. Viewing the evidence in the light most favorable to Plaintiff, the Court will refer to it as "her" position which was reviewed.

discrimination of which Plaintiff has complained may serve as background evidence but are not actionable in themselves. Morgan, 536 U.S. at 112. The remaining six incidents are not discrete acts and will be analyzed further below as potential acts contributing to a claim of a hostile workplace.

Disparate Treatment--Pre-September 2001 Claims

Plaintiff has conceded the untimeliness of these claims. (Pltf. Response at 17.) The Court will grant Defendant summary judgment with regard to these.

Disparate Treatment Relating to Improper Classification

In order to prevail on a claim for disparate treatment, Plaintiff must first establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). If Plaintiff establishes a prima facie case, a presumption of discrimination is established which places a burden of production on Defendant to articulate a legitimate non-discriminatory reason for Plaintiff's treatment. Burdine, 450 U.S. at 254; Sanchez v. Denver Public Schools, 164 F.3d 527, 531 (10th Cir. 1998). Once Defendant has done so, Plaintiff must then be given an opportunity to prove that Defendant's proffered reason is pretextual. Id.

*Prima Facie Case*

To establish a prima facie case of disparate treatment, Plaintiff must show (1) that she was a member of a protected class, (2) that she experienced an adverse employment action, (3) she was qualified for the position at issue, and (4) she was treated less favorably than her than her male (sex discrimination) or non-Hispanic (national origin discrimination) counterparts. Sanchez, 164 F.3d at 531.

14

An adverse employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different employment responsibilities, or a decision causing a significant change in benefits.  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998) and see Sanchez, 164 F.3d at 532.  An "adverse employment action" is not limited to monetary losses or benefits. Annett v. Univ. of Kansas, 371 F.3d 1233, 1239 (10th Cir. 2004).  It includes acts which carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects. Id.  However, mere inconvenience or alteration of job responsibilities will not suffice.  Sanchez, 164 F.3d at 532. An involuntary lateral transfer does not constitute an adverse employment action when the transfer does not alter Plaintiff's responsibilities, salary, or benefits.  Id.

In this case, even considering all of the properly exhausted acts, Plaintiff has not experienced an adverse employment action because these acts did not lead to a significant change in employment responsibilities or benefits. Burlington, 524 U.S. at 761 (1998); Annett, 371 F.3d at 1239; Sanchez, 164 F.3d at 532.[6]

Plaintiff complains that she was entitled to higher pay due to accretion of duties (First Amended Complaint at 3) and alleges that the grant writing she was asked to perform is a lower grade activity (GS-11) than international program activities. (Pltf. Response Ex. 10 at 53-54.) Defendant has objected to Plaintiff's allegation that grant writing is a lower paid activity as her

---

[6]Conceivably the denial of classification at GS-13 could be analyzed as a failure to promote but Plaintiff cannot prove a prima facie case under that theory either.  A prima facie case for failure to promote requires that Plaintiff show (1) she belongs to a protected group, (2) she was qualified for the promotion, (3) she was not promoted, and (4) the position remained open or was filled by a non-minority person.  Amro v. Boeing, 232 F.3d 790, 796 (10th Cir. 2000) Here, Plaintiff cannot show that the position remained open or that it was filled by a non-minority person.

mere speculation, objecting that Plaintiff is not an expert in classification, so her opinion on this issue would not be admissible.  (Def. Reply, unnumbered page 7.) It is noteworthy here that Plaintiff deposed two government witnesses with substantial classification expertise and yet offers no evidence from them on this point.[7]  Plaintiff's unskilled speculation is not admissible evidence and is not sufficient to withstand summary judgment. Pastran, 210 F.3d at 1204 n.1; Salguero, 366 F.3d at 1177, n.4.

When Plaintiff began working as an International Coordinator in 1997, grant writing was a small part of her duties and she was classified at GS-12.  (Undisp. Fact #8; Pltf. Response Ex. 10, Fierro Dep. at 33.) Even when Plaintiff's job was re-configured to consist of 75% grant writing duties and 25% international duties, her grade remained the same, GS-12. (Undisp. Fact #22.) Hence, what happened to Plaintiff is similar to an involuntary lateral transfer that did not adversely affect her employment status as in Sanchez, 164 F.3d at 532. Plaintiff has not shown that there is a genuine dispute of material fact that her position should have been graded at GS-13 and Plaintiff did not experience an adverse employment action when her modified position description remained classified at GS-12.

With regard to humiliation or damage to reputation, Plaintiff has alleged that the memo sent to Field Office Managers implied that she was not credible, slandered her and affected her adversely. (Motion, Ex. G, Fierro Resp. to Interrog. at 10.)  No evidence of this negative impact is offered by Plaintiff other than her conclusory statement.  The plain language of the memo is not

---

[7]Regina Melchor, Human Resources Specialist (Pltf. Response Ex. 2 at 4) and Erick Kurkowski, Human Resources Specialist (Pltf. Response Ex. 3 at 4).

slanderous on its face.[8] There is no evidence to support Plaintiff's allegation that the memo

harmed her reputation.  As a result, Plaintiff has not shown that there is a genuine dispute of

material fact with regard to damage to her reputation from circulating the position description to

Field Office Managers.  Plaintiff has not met her burden of demonstrating a prima facie case of

disparate treatment because she has not suffered an adverse employment action. Defendant's

motion for summary judgment on the disparate treatment claim will be granted. See Was v. M &

T Bank, 2004 WL625023, at *4 (W.D.N.Y. Feb. 6, 2004)(sporadic harsh treatment and unfair

criticism does not rise to adverse employment action); Finnegan v. Dep't of Pub. Safety &

Correctional Serv., 184 F. Supp.2d 457, 461 (D. Md. 2002)(same); Lewis v. Amer. Foreign Serv.

Ass'n, 846 F. Supp. 71, 74 (D.D.C. 1993)(same).

Hostile Work Environment

        Title VII prohibits hostile environment harassment based on national origin or sex.  See

Meritor Savings Bank FSB v. Vinson, 477 U.S. 57, 65 (1986); 42 U.S.C. 2000e-16(a).  To be

actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment.  Vinson, 477 U.S. at 65; Smith v.

Northwest Financial Acceptance, Inc., 129 F.3d 1408, 1413 (10th Cir. 1997). The severity or

---

[8]The memo in question says in part, "As mentioned during the EMT conference call on September 19, 2001, I am
enclosing a draft PD [position description] and support documentation for the Grants Partnership and International
Program Coordinator.  This is a unique position for the NM BLM that has spurred much discussion among EMT
members as it relates to clearly defined roles and responsibilities, priorities and a balanced approach to these two
programs. ... We would like your written feedback on whether the proposed PD meets your Field Office needs.
Should you feel that certain areas are over or under emphasized, this type of feedback would also be helpful prior to
classifying this PD.  Since the attached documentation was crafted by Joyce Fierro and the newly developed PD
falls within her program areas, she is likely to contact you about this issue in an effort to obtain some feedback or
clarify any questions you may have.  However, as her supervisor, I would ask that you please provide me with your
written feedback for your consideration into this PD no late [sic] than October 12, 2001."(Undisp. Fact #16;
Motion at Ex. J, Letter from Gary Johnson to Field Managers of 9/21/2001.)

pervasiveness must create (1) an objectively hostile or abusive work environment and (2) the victim must also subjectively perceive it as hostile or abusive. <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21-22 (1993). To determine whether the environment is hostile or abusive, the Court considers the totality of the circumstances such as the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, whether it unreasonably interferes with the employee's work performance and the context in which it occurs. <u>Id.</u> at 23.

Plaintiff must show the hostile environment is a result of discriminatory animus. <u>Trujillo v. Colorado Health Sci. Ctr.</u>, 157 F.3d 1211, 1214 (10th Cir. 1998). But facially neutral conduct can sustain a hostile environment claim if supported by other overtly gender-discriminatory conduct. <u>O'Shea v. Yellow Tech. Serv., Inc.</u>, 185 F.3d 1093, 1097 (10th Cir. 1999).

As noted above, to exhaust administrative remedies for hostile work environment claims, it is only necessary that at least one act "contributing to the claim" occurs within the forty-five day filing period. 29 C.F.R. § 1614.105(a); <u>see</u> <u>Morgan</u>, 536 U.S. at 117; <u>Martinez v. Potter</u>, 347 F.3d at 1211. Acts preceding the forty-five day period and those occurring after the request for counseling may be included provided that an act occurring within the forty-five days contributes to the claim. <u>Id.</u> However, unexhausted <u>discrete</u> acts may not be added to a hostile work environment claim to make them actionable. <u>Davidson</u>, 337 F.3d at 1885-86.

Here, the re-classification in 2002 was a discrete act and cannot be considered as part of a hostile work environment claim. <u>Id.</u> That leaves the allegations about the Fall 2001 meetings between Plaintiff and her superiors, the fact that Plaintiff's job description was circulated to Field Office Managers for feedback, and that Mr. Goff excluded Plaintiff from meetings.

18

Plaintiff has not described anything about those acts that could be objectively termed "severe."  There was no hostility expressed, there is nothing about them that would objectively be deemed hostile or abusive. <u>Harris</u>, 510 U.S. at 21-22.  They were not physically threatening or humiliating.  <u>Id.</u> There is no doubt that Plaintiff subjectively viewed these acts as disparate treatment, a violation of her privacy and, thus, perhaps abusive.  (Motion Ex. G, Fierro Resp. to Interrog. at 11.)  However, they were not objectively severe.

Nor were they part of a pervasive pattern of hostility.  Plaintiff has stated that circulation of her position description to the Field Office Managers was not standard practice.  (<u>Id.</u>) As noted above, Plaintiff has no expertise in personnel matters so this is a mere conclusory statement insufficient to create a genuine issue of material fact to survive summary judgment. <u>Salguero</u>, 366 F.3d at 1177, n.4.  Plaintiff's own witness, Regina Melchor, has stated that it would not be unusual to circulate a position description if the position is one that interacts with the Field Offices.  (Pltf. Response Ex. 2, Melchor Dep. at 40.)   Finally, Mr. Goff's excluding Plaintiff from meetings was neither severe nor pervasive.  Plaintiff has failed to show the existence of a genuine issue of material fact whether any of these acts contributed to a hostile work environment.  Thus, there is no evidence in the present record that the acts occurring within the forty-five day period prior to her EEO counseling contributed to a claim for hostile work environment.  <u>Morgan</u>, 536 U.S. at 115.  Defendant's motion for summary judgment will be granted on the hostile work environment claim.

<u>Retaliation</u>

A retaliation claim can proceed, even if the underlying claim of discrimination is decided against plaintiff.  <u>Pastran v. K-Mart Corp.</u>, 210 F.3d 1201, 1205 n. 4, (10th Cir. 2000); <u>Sanchez</u>,

164 F.3d at 533. A prima facie case of retaliation consists of (1) a plaintiff who has engaged in protected activity, (2) an adverse employment action taken against her, and (3) a causal connection between the protected activity and the adverse action.  Annett v. Univ. of Kansas, 371 F.3d 1233, 1237 (10th 2004).  For the purposes of a prima facie case, a causal connection can be established if protected activity is followed in close temporal proximity by an adverse employment action. Id. at 1239-40 (citing Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1320 (10th Cir. 1999)).

    The Tenth Circuit liberally defines an "adverse employment action." Heno v. Sprint/United Mgmt. Co., 208 F.3d 847, 857 (10th Cir. 2000). Whether an act is an adverse employment action is analyzed on a case by case basis and does not extend so far as to include a mere alteration of job responsibilities.  Sanchez, 164 F.3d at 532; Tran v. Trustees of State Colleges in Colo., 355 F.3d 1263, 1267 (10th Cir. 2004).   To be actionable under Title VII, retaliation must amount to an alteration of Plaintiff's "compensation, terms, conditions, or privileges of employment" or adversely affect her status as an employee. Sanchez, 164 F.3d at 533. However, tense personal relationships, acting in a chilly manner, or distress over disagreeable conduct is not remediable under Title VII.  Id.

    With regard to causation, the closer the adverse employment action occurs after the protected activity, the stronger the inference of causation.  Anderson v. Coors Brewing Co., 181 F.3d 1171, 1179 (10th Cir. 1999).  One and a half months may be close enough by itself to show causation.  Id. Three months, without any other evidence of causation, is insufficient.  Richmond v. ONEOK, Inc., 120 F.3d 205, 209 (10th Cir. 1997).

Plaintiff complains that Carsten Goff retaliated against her by (1) a continuing effort to discredit her, (2) by "continuing his refusal to pay her the salary enjoyed by ...male program leads," (3) by his "continual refusal" to process her request for reclassification, (4) by his manipulation and derailing of Plaintiff's reclassification, and (5) by interference with the investigation conducted by Lonnie King who was hired by the Department of the Interior to investigate Plaintiff's claims.  (Amended Complaint at ¶ 11, p. 5.)

There is no dispute that Plaintiff engaged in protected activity.  (Undisp. Facts #1-5.) However, Plaintiff cannot establish a prima facie case of retaliation because she either cannot show a genuine issue of material fact as to whether there was an adverse employment action or whether there was a causal connection between the act and her protected activity.  <u>Annett</u>, 371 F.3d at 1237.

      1)    <u>Goff's effort to "discredit" plaintiff</u>

By this, the Court assumes Plaintiff is referring to Goff's decision to circulate her position description for feedback from the Field Office Managers and the dismissive treatment of the award she received for her work in Washington D.C.   With regard to Goff's decision to circulate her position description, Plaintiff filed her first request for EEO counseling on September 17, 2001 (Undisp. Fact #1), <u>after</u> she was told of the plan to circulate her position description at a meeting on September 17, 2001 (Motion Ex. G, Fierro Resp. to Interrog. at 9.)   Thus, Plaintiff cannot establish a prima facie case of retaliation because the decision to circulate her position description predated her EEO activity, thus destroying any inference of a causal connection. <u>Annett</u>, 371 F.3d at 1237.   With regard to Goff's description of Plaintiff's award (Pltf. Response

Ex. 5, Fierro Dep. at 227) this is mere chilly treatment, not an adverse employment action.

Sanchez, 164 F.3d at 533.

    2)    <u>Goff's "continuing" refusal to pay her the salary enjoyed by ...male program leads</u>

    Plaintiff alleges that "In the relevant time periods, every other program lead in the BLM

New Mexico office was a GS-13 and all were male other than Ms. Fierro and Ms. Angela West."

(Pltf. Disp. Fact at 14.) Even assuming <u>arguendo</u> that all the men were paid more than the women

and that these people were similarly situated,[9] if the pay disparity preceded Plaintiff's filing of an

EEO complaint, the unequal pay is not retaliatory.  The fact that it pre-dated the initial request for

EEO counseling destroys any inference of causation. <u>Annett</u>, 271 F.3d at 1237.

    3)    <u>Goff's "continual" refusal to process her request for reclassification</u>

    This is neither an adverse employment action nor is it causally connected to Plaintiff's

protected activity.  As described above, the re-classification itself was not an adverse employment

action. (<u>See</u> Disparate Treatment Relating to Improper Classification, <u>supra</u>.)  The delay in

classifying Plaintiff's position is similarly not an adverse employment action because it is not an

alteration of Plaintiff's "compensation, terms, conditions, or privileges of employment" and did

not adversely affect her status as an employee. <u>Sanchez</u>, 164 F.3d at 533.

---

[9] Note that these people do not appear to be similarly situated.  Nearly all of the GS-13 positions required a college education or other specialized knowledge which Ms. Fierro did not have.  (Motion at Ex. I, Melchor Decl.) Plaintiff objects to the implication that the lack of a college degree would have precluded Ms. Fierro from obtaining a position at GS-13. Granting that point, Plaintiff's Deposition of Angela West (a female) reveals that she has a Masters degree and has a grade of GS-13. (Pltf. Response Ex. 6, West Dep. at 3, 14.) Rather than support an inference of discrimination, these facts suggest that men <u>or</u> women with specialized knowledge or college degrees were graded GS-13 while those who did not have specialized knowledge or a degree (like Ms. Fierro) were graded GS-12 (Pltf. Response Ex. 2 at 35). The facts offered by Plaintiff fail to raise a genuine issue of material fact that Plaintiff's grade of GS-12 was due to her race or sex.

Moreover, Goff's "continued" refusal to process Plaintiff's request for classification began in September 1999, and persisted through September 2000 and September 2001.  (Motion Ex. G, Fierro Resp. to Interrog. at 15.)  Plaintiff's first EEO activity did not occur until September 2001. Goff's procrastination with regard to Plaintiff's reclassification began well before her first protected activity and therefore raises no inference of any causal connection. Annett, 371 F.3d at 1237.

> 4)      Goff's manipulation and derailing of Plaintiff's reclassification

Goff's alleged "manipulation" occurred ten months after Plaintiff's protected activity which is not in close temporal proximity and so any inference of causation is weak.  Anderson, 181 F.3d at 1179.  It is not an adverse employment action because it did not result in a significant change in employment status.  Tran 355 F.3d at 1267; Aquilino, 268 F.3d at 930. (See Disparate Treatment Relating to Improper Classification, supra.)  Hence, Plaintiff cannot establish a prima facie case of retaliatory discrimination on this basis.

> 5)      Interference with Mr. King's EEO investigation

Plaintiff alleged that BLM employees made false allegations against Lonnie King, the EEO investigator to interfere with the investigation of Plaintiff's complaint. (Amended Complaint ¶ 9.) Defendant has asked for summary judgment on this claim, arguing that Plaintiff's sole remedy is to file the suit she has filed.  Plaintiff's Response failed to rebut this argument; Plaintiff has offered no facts beyond the allegation in the complaint and did not dispute Defendant's facts with respect to this claim. (Undisp. Facts # 30 & 31.) Plaintiff has abandoned this claim.

In conclusion, none of the alleged acts establishes a prima facie case of retaliation and Defendant's motion will be granted for summary judgment on the retaliation claims.

## IV. CONCLUSION

Plaintiff failed to exhaust many incidents of allegedly discriminatory conduct.  Plaintiff has failed to raise genuine issues of material fact with regard to all of her claims of disparate treatment, improper classification, hostile work environment and retaliation.  Defendant's motion for summary judgment will be granted.

## V. ORDER

It is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. 35) is GRANTED.

**DATED** at Albuquerque, this 24th day of November, 2004.


_____
BRUCE D. BLACK
United States District Judge

Attorneys:

For Plaintiff
        Madison, Harbour, Mroz & Brennan, P.A.
        Timothy L. White
        P.O. Box 25467
        Albuquerque, N.M. 87125-5467

For Defendant
        John W. Zavitz
        Assistant U.S. Attorney
        P.O. Box 607
        Albuquerque, N.M. 87102